**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carpenter Crest 401, | No. CV-15-02004-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Rebekah Converti, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Douglas Lane Probstfeld's Amended Motion for Entry of Default Judgment. (Doc. 17.) Defendants Rebekah Converti and The 2-Acorns, Inc. (collectively, Defendants) were served with Summons and the Complaint on January 27, 2016. (Doc. 11.) On March 7, 2016, after Defendants failed to respond, Plaintiff filed a Motion for Entry of Default Judgment, which the Court construed as a Motion for Entry of Default. (Docs. 12, 13, 14.) On March 8, 2016, the Clerk entered default against Defendants. (Doc. 13.) On April 22, 2016, the Court ordered Plaintiff to file supplemental briefing addressing the factors identified by the Ninth Circuit Court in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). (Doc. 14.) On May 6, 2016, Plaintiff filed a Motion for Entry of Default Judgment against Defendants pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. (Doc. 15.) Due to several errors in Plaintiff's damage calculations, the Court denied Plaintiff's Motion without prejudice. (Doc. 16.) On November 28, 2016, Plaintiff filed an Amended Motion for Entry of Default Judgment. (Doc. 17.) For the reasons set forth below, the Court will grant

Plaintiff's Amended Motion.[1]

**I.   Background**

On October 6, 2015, Plaintiff Douglas Lane Probstfeld, Trustee of the Carpenter Crest 401(k) PSP, a tax-exempt profit-sharing plan and trust, filed his Complaint in this action, alleging that Defendants Rebekah Converti and The 2-Acorns, Inc. violated A.R.S. § 44-1991 (Arizona securities fraud), and 15 U.S.C. § 78j (Federal securities fraud). (Doc. 1 ¶¶ 45-58.) Plaintiff also asserts claims against Defendants for: (1) fraud, fraudulent inducement, intentional misrepresentation; (2) negligent misrepresentation; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) conversion. (*Id.* ¶¶ 59-93.)[2]

In support of his claims, Plaintiff alleges that in September 2013, Defendant "Converti solicited investments in a home 'fix and flip' project through her website and through contacts with various financial advisors." (*Id.* ¶ 11.) One of those advisors, Joshua Sharp, informed Plaintiff that with an investment of $350,000 to cover improvements to a home, Plaintiff would receive either a 15% return on the investment or a 30% net profit share from the home. (*Id.* ¶¶ 13-17; Doc. 1-1 at 2.) On October 4, 2013, Plaintiff informed Sharp of his interest in the investment opportunity. (Doc. 1 ¶ 21.) On October 6, 2013, Defendant Converti signed a Promissory Note on behalf of The 2-Acorns, Inc., secured by a deed of trust, stating that Plaintiff's $350,000 would be repaid upon the resale of the home. (*Id.* ¶ 24; Doc. 1-1 at 5.) The Promissory Note further states that "[b]orrower agrees to pay monthly interest payments, due the sixth of each month starting April 6th 2014, in the amount of [$4,666.67] if the loan is not paid in full

---

[1] Because Defendants have not appeared or consented to Magistrate Judge jurisdiction, this Court issues an Order on Plaintiff's pending Amended Motion for Entry of Default Judgment. *See* General Order 11-03.

[2] Plaintiff also names John Doe Converti, the fictitious name of Rebekah Converti's husband, as a Defendant in this action. (Doc. 1.) Plaintiff claims in the Complaint that it is unknown whether Rebekah Converti is married, and, to date, Plaintiff has not further identified or served this fictitiously-named Defendant. (*Id.* ¶ 6.) The Court's reference to "Defendant Converti" throughout this Order refers only to Rebekah Converti.

by April 1[], 2014." (Doc. 1-1 at 5.)

Plaintiff also alleges that "[o]n October 8, 2013, [he] authorized a wire transfer of $350,000 from the Carpenter Crest 401(k) Plan and Trust to an account designated by The 2-Acorns, Inc." (Doc. 1 ¶ 30.) However, Plaintiff discovered, after wiring the money, that a majority of the original investment was used to purchase the home rather than for renovations to the home, and the balance of the money was distributed to Defendants. (*Id.* ¶¶ 31-32, 92.) On March 7, 2014, Sharp informed Plaintiff that the home would be placed on the market in April; however, Plaintiff received no communications from Defendant Converti, Defendant The 2-Acorns, Inc., or Sharp until May 28, 2014. (*Id.* ¶¶ 33-35.)

On May 28, 2014, Defendant Converti informed Plaintiff that none of the renovations were complete and the home would be foreclosed if Plaintiff did not provide more money. (*Id.* ¶ 35.) Plaintiff demanded an explanation for what happened to his money. (*Id.* ¶ 36.) Defendant Converti explained in a June 3, 2014 email that only $100,000 of Plaintiff's investment was used to remodel the home, and the rest of the investment was used to purchase the home and for closing costs. (*Id.* ¶ 36.) Defendant Converti further told Plaintiff that "[i]t was my fault for closing the deal before it was 100% financed knowing I could not finish the deal without the additional funds." (*Id.* ¶ 40.)

Plaintiff also alleges that Defendant Converti told Plaintiff the contractor she allegedly hired "ripped her off." (*Id.* ¶ 37.) However, Plaintiff asserts that Defendants did not make any effort to engage a contractor to renovate the property, never sought a construction permit, and did not complete any remodeling or renovations on the property. (*Id.* ¶¶ 38-39.) Defendants did not contribute additional funds to avoid a foreclosure on the property and did not make any payments to Plaintiff at any time. (*Id.* ¶¶ 41, 44.) Plaintiff further asserts that although Sharpe represented otherwise, Defendants did not have any "slush" funds "at any time either to acquire or renovate the home or to make payments to the first lien holder." (*Id.* ¶¶ 14, 42.) As a result, Plaintiff claims, "[o]n June

26, 2014, the first lien holder foreclosed on the home, and it was sold at a trustee sale pursuant to A.R.S. § 33-801 et seq." (*Id.* ¶ 43.)

On January 27, 2016, Plaintiff served the Summons and Complaint on Defendants. (Doc. 11.) Neither Defendant answered the Complaint or otherwise appeared within the time frame required by Rule 12 of the Federal Rules of Civil Procedure. On March 7, 2016, Plaintiff filed his Motion for Entry of Default against Defendants. (Doc. 12.) On March 8, 2016, the Clerk entered default against Defendants. (Doc. 13.) On April 22, 2016, the Court ordered Plaintiff to file supplemental briefing. (Doc. 14.) Plaintiff subsequently filed a Motion for Default Judgment. (Doc. 15.) The Court denied Plaintiff's Motion without prejudice based on numerous errors in Plaintiff's damage calculations. (Doc. 16.) On November 28, 2016, Plaintiff filed an Amended Motion for Entry of Default Judgment. (Doc. 17.) Plaintiff asks the Court to enter judgment in his favor for (1) $350,000 in principal; (2) $102,666.74 in unpaid monthly interest payments (22 months); and (3) $4,666.67 in additional monthly interest payments until the principal amount of $350,000, plus all accrued interest, has been paid in full to Plaintiff. (*Id.*)

## II.  Discussion

### a.  Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). (stating that where the Court properly raised, *sua sponte*, the issue of whether it could exercise personal jurisdiction over Iraq before deciding whether it could enter default judgment against it in an effort to "avoid ent[ry of] a default judgment that can later be successfully attacked as void"). As detailed below, the Court finds that it has both subject matter jurisdiction over this action and personal jurisdiction over the parties.

### 1.  Subject Matter Jurisdiction

Plaintiff alleges Defendants violated 15 U.S.C. § 78j. (Doc. 1 ¶¶ 54-58.) Therefore, pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over

Plaintiff's federal claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, law, or treaties of the United States."). Furthermore, the Court has supplemental jurisdiction over Plaintiff's related state law claims. *See* 28 U.S.C. § 1367(a) (. . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Therefore, the Court is satisfied that it has subject matter jurisdiction over this action.

### 2. Personal Jurisdiction

#### i. Defendant Converti

Personal jurisdiction over a defendant may be acquired "by personal service of that defendant or by means of a defendant's 'minimum contacts' with the jurisdiction." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Here, Plaintiff alleges that Defendant Converti is a resident of Maricopa County, Arizona and was personally served on January 27, 2016, at a residence in Gilbert, Arizona. (Doc. 11.) Thus, the Court is satisfied that it has personal jurisdiction over Defendant Converti.

#### ii. Defendant The 2-Acorns, Inc.

Plaintiff's Complaint alleges that at all relevant times, Defendant The 2-Acorns, Inc. was a non-resident, Nevada corporation. (Doc. 1 ¶ 4.) Plaintiff alleges that Defendant Converti is the managing agent of The 2-Acorns, Inc. and, therefore, the corporation was properly served under Rule 4 of the Federal Rules of Civil Procedure. (Doc. 1 ¶¶ 8, 25; Doc. 12 at 2-3.)

Rule 4(h) of the Federal Rules of Civil Procedure provides that a corporation is properly served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Defendant Converti was served with the Summons and Complaint for The 2-Acorns, Inc. (Doc. 11.) However, personal service of a corporate

agent within the forum state, alone, is not necessarily sufficient to establish that this Court has personal jurisdiction over a nonresident corporation. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) ("A court may exercise general personal jurisdiction over a corporation only when its contacts 'render it essentially at home' in the state.").

The Court finds, however, that it has personal jurisdiction over The 2-Acorns, Inc. with regard to Plaintiff's federal claim pursuant to 15 U.S.C. § 78aa. Jurisdiction for claims brought under the Securities Exchange Act is governed by Section 27 of the Act. *See* 15 U.S.C. § 78aa. "So long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985). Thus, because, as detailed below, the Court finds that Plaintiff has sufficiently stated a claim against The 2-Acorns, Inc. for violations of 15 U.S.C. § 78j, Section 27 applies, and Plaintiff need only have alleged Defendant The 2-Acorns, Inc. has minimum contacts with the United States. *See Vigman*, 764 F.2d at 1316; *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) ("[W]e adhere to our decision in *Vigman* that, when a statute authorizes nationwide service of process, national contacts analysis is appropriate.").

Here, Plaintiff asserts that Defendant is a Nevada corporation, which solicited Plaintiff for an investment property in Arizona. (Doc. 1 ¶¶ 4, 9, 20.) Plaintiff served The 2-Acorns through its agent, Defendant Converti, in Arizona. (Doc. 11.) Therefore, the Court finds that Plaintiff has alleged sufficient contacts within the United States to allow this Court to exercise personal jurisdiction over Defendant The 2-Acorns, Inc. with regard to Plaintiff's federal Securities Act claim.

The Court further finds that it has pendent personal jurisdiction over Plaintiff's related state law claims. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1176 (9th Cir. 2004). Under the pendent personal jurisdiction doctrine, if a district court has personal jurisdiction over federal claims, "then it may, in its discretion, exercise

pendent personal jurisdiction over the state-law claims contained in the same complaint." *Id.* For such jurisdiction to be proper, Plaintiff's state law claims must "arise[ ] out of a common nucleus of operative facts" as the federal claim over which the court has personal jurisdiction. *Id.* at 1180. "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id.* at 1180-81. The decision to exercise pendent personal jurisdiction is within the discretion of the district court and depends on "'considerations of judicial economy, convenience and fairness to litigants.'" *Id.* at 1181 (quoting *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 5 (D.C. Cir. 1977)).

Here, all of Plaintiff's claims arise from the same nucleus of operative facts. (Doc. 1 ¶¶ 11-44.) Therefore, in the interests of judicial economy, convenience, and fairness, the Court finds it appropriate to exercise pendent personal jurisdiction over Plaintiff's state law claims against The 2-Acorns, Inc.

### b. Standard for Entry of Default Judgment

#### i. Rule 55 of the Federal Rules of Civil Procedure

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party must apply to the court for a default judgment, according to Rule 55(b)(2), however, the district court has discretion to grant default judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (considering lack of merit in plaintiff's substantive claims, the court did not abuse its discretion in declining to enter a default judgment). Here, the Clerk has entered Defendants' default. Thus, the Court may consider Plaintiff's request for default judgment against Defendants.

#### ii. The *Eitel* Factors

When deciding whether to grant default judgment, the Court considers the following "*Eitel*" factors: "(1) the possibility of prejudice to the plaintiff[;] (2) the merits

of the plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;] (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect[;] and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). As detailed below, the Court finds that the factors weigh in favor of granting Plaintiff's Amended Motion for Entry of Default Judgment against Defendants.

### 1. Possible Prejudice to Plaintiff

The first *Eitel* factor weighs in favor of granting Plaintiff's Amended Motion. Plaintiff served Defendants on January 27, 2016. (Doc. 11.) Defendants have not answered the Complaint or otherwise appeared in this action. In view of Defendants' default, Plaintiff has no alternative means by which to resolve his claims against Defendants. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Therefore, Plaintiff will be prejudiced if a default judgment is not entered.

### 2. Merits of Plaintiff's Claims and the Sufficiency of the Complaint

Considering the relationship between the second and third *Eitel* factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the Complaint together. The Ninth Circuit Court has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Id.* at 1175 (citation omitted).

Plaintiff asserts eight separate Counts against Defendants: (1) Arizona securities fraud pursuant to A.R.S. § 44-1991; (2) federal securities fraud pursuant to 15 U.S.C. § 78j; (3) fraud, fraudulent inducement, intentional misrepresentation; (4) negligent misrepresentation; (5) breach of contract; (6) breach of the implied covenant of good faith and fair dealing; (7) conversion against Defendants for using Plaintiff's funds

towards the closing costs of the home; and (8) conversion against Defendants for withholding the remainder of the $350,000 for Defendant Converti's personal use. (Doc. 1 ¶¶ 45-93.) The Court addresses these claims below.

### a. Claims Pursuant to A.R.S. § 44-1991

Plaintiff asserts claims against Defendants under A.R.S. § 44-1991 for securities fraud. A.R.S. § 44-1991(A) provides the following:

> A. It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, including securities exempted under section 44-1843 or 44-1843.01 and included transactions exempted under section 44-1844, 44-1845 or 44-1850, directly or indirectly to do any of the following:
>
> 1. Employ any device, scheme or artifice to defraud.
>
> 2. Make any untrue statement of material fact, or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> 3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

A.R.S. § 44-1991(A). A plaintiff's "burden of proof [for claims pursuant to 44-1991(A)(2)] requires only that [he or she] demonstrate that the statements were material and misleading." *Aaron v. Fromkin*, 994 P.2d 1039, 1042 (Ariz. Ct. App. 2000).

Here, Plaintiff asserts that Defendants, through their agent Sharp, made the following false statements to Plaintiff in connection with an offer to buy or sell a security: (1) the $350,000 would be applied solely toward renovating the home; (2) Defendants had a "slush fund" to cover unforeseen contingencies; (3) Defendants would hire licensed professionals to remodel the home; and (4) Defendants would abide by the terms of the Promissory Note. (Doc. 1 ¶ 49.) Plaintiff also alleges that Defendants' false misrepresentations caused Plaintiff to invest money in Defendants' flip scheme and to suffer an economic loss. (*Id.* ¶¶ 24-28, 47-53.) Plaintiff further alleges that Defendants were willful and malicious in making the false statements, and the statements were false at the time they were made. (*Id.* ¶ 49.) Based on these alleged facts, the Court finds that

Plaintiff has sufficiently stated claims under A.R.S. § 44-1991(A)(2).

**b. Claims Pursuant to 15 U.S.C. § 78j**

Plaintiff also alleges in his Complaint that Defendants are liable for federal securities fraud pursuant to 15 U.S.C. § 78j(b). (Doc. 1 ¶¶ 54-58.) 15 U.S.C. § 78j(b) provides that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –
>
> . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement[,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5 implements § 78j by making it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a claim for relief under 15 U.S.C. § 78j, Plaintiff must allege: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). Plaintiff must show both elements of causation—transaction causation and loss causation. *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1118 (9th Cir. 2013). "Transaction causation is akin to reliance; it focuses on the time of the transaction and 'refers to the causal link between the defendant's misconduct and the plaintiff's

decision to buy or sell securities.'" *Id.* (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)). "Loss causation is simply 'a causal connection between the material misrepresentation and the loss.'" *Id.* at 1119 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005)). "[A] plaintiff can satisfy loss causation by showing that 'the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss.'" *Id.* at 1120 (quoting *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007)).

The Court finds that Plaintiff's Complaint sufficiently states claims for relief against Defendants under 15 U.S.C. § 78j(b). Plaintiff alleges that Defendants' intentional misrepresentations, through their agent Sharp, caused Plaintiff to invest in the flip scheme under the terms of the Promissory Note. (Doc. 1 ¶¶ 56-58.) Plaintiff further alleges that Defendants' misrepresentation of the funds available to purchase the property and for contingencies caused Plaintiff's economic loss. (*Id.* ¶¶ 42-43, 47-53.) More specifically, Plaintiff asserts that because Defendants in fact did not have a slush fund to fully acquire or renovate the home, the first lien holder foreclosed on the home and it was sold at a trustee sale, causing Plaintiff a loss of his initial investment and any expected return. (*Id.* ¶¶ 35, 39-40, 42-43.) Therefore, the Court finds that Plaintiff has sufficiently stated claims for relief against Defendants pursuant to 15 U.S.C. § 78j.

### c. Fraud and Negligent Misrepresentation Claims

Plaintiff also asserts claims for fraud and negligent misrepresentation against Defendants. (Doc. 1 ¶¶ 59-75.) In Arizona, to state a common law fraud claim, a plaintiff must sufficiently plead: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably calculated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury. *Arnold & Associates, Inc. v. Misys Healthcare Systems, a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1027 (D. Ariz. 2003). Negligent misrepresentation "is committed by the giving of false information intended for the

guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information." *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987).

Here, Plaintiff alleges that: (1) Defendants, through their agents, made false representations as described above; (2) the false representations were material because Plaintiff only agreed to transfer the money based on the terms set forth by Sharp (Doc. 1 ¶¶ 16-23, 50, 51); (3) Defendants intended Plaintiff to rely on the representations to obtain Plaintiff's money (*id.* ¶¶ 13-18); and (4) Plaintiff reasonably relied on the representations because Defendant Converti "held herself out as a real estate expert who had prior experience in these types of 'fix and flip' opportunities" (*id*. ¶ 65). Plaintiff further asserts that Defendants' misrepresentations were willful and malicious, with the intent to harm. (*Id.* ¶ 53.) Finally, Plaintiff alleges that "[a]s a direct, proximate and foreseeable result of Defendant's negligent [and fraudulent] acts and omissions, Plaintiff suffered, and continues to suffer, damages, in the amount of $350,000 plus the monthly interest payments and late charges, in an amount not yet fully determined." (*Id.* ¶¶ 66, 74.) Based on these allegations, the Court finds that Plaintiff has sufficiently stated claims for fraud and negligent misrepresentation.

### d.  Conversion

Plaintiff also alleges that Defendants are liable for conversion. Conversion is defined as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990). To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion. *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citing *Sears Consumer Fin. Corp.*, 802 P.2d at 1034). To maintain an action for conversion of money, a plaintiff must establish that "the money can be described, identified or segregated, and an obligation to treat it in a specific manner is

established." *Gehrke*, 91 P.3d at 365 (quoting *Autoville*, 510 P.2d at 403).

Here, Plaintiff alleges that Defendants applied $190,474.45 of Plaintiff's investment toward the down payment and closing costs, and kept the remainder of the investment for Defendant Converti's personal use, even though Defendants, through their agreement, had an obligation to use that money to renovate the purchased home. (Doc. 1 ¶¶ 82-93.) Plaintiff asserts that when the home was foreclosed, Plaintiff lost his $350,000. (*Id.* ¶¶ 86, 90.) And, under the terms of the Promissory Note, Defendants were obligated to return Plaintiff's investment upon closing on the sale of the home. Under these facts, the Court finds that Plaintiff has sufficiently stated claims for conversion.

### e. Breach of Contract

To state a claim for breach of contract, a plaintiff is required to prove the existence of a contract, its breach, and the resulting damage. *Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998). Plaintiff alleges that "Defendants breached the terms of the Promissory Note" and that "Plaintiff suffered, and continues to suffer direct and consequential damages" as a result of the breach. (Doc. 1 ¶¶ 77-78.) A Promissory Note "is a contract that evidences the loan and the [borrower's] duty to repay." *Hogan v. Wash Mut. Bank, N.A.*, 277 P.3d 781, 784 (Ariz. 2012). Although the Promissory Note was executed by Defendant Converti on behalf of The 2-Acorns, Inc., Plaintiff asserts that The 2-Acorns, Inc. is the alter ego of Defendant Converti and, therefore, Defendant Converti is personally liable for the conduct of the corporation. (Docs. 1 ¶¶ 8, 68; Doc. 1-1 at 5.)

Under Arizona law, "[t]he corporate fiction will be disregarded when the corporation is the alter ego or business conduit of a person." *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). In assessing unity of control between a corporation and its shareholders, the Court considers: "payment of salaries and expenses of the corporation by shareholders; failure to maintain corporate formalities; undercapitalization; commingling of corporate and personal finances; plaintiff's lack of knowledge about a

separate corporate existence; owners' making of interest-free loans to the corporation; and diversion of corporate property for personal use." *Great Am. Duck Races, Inc. v. Intellectual Solutions, Inc.*, 2:12-cv-00436-JWS, 2013 U.S. Dist. LEXIS 36190, at *7 (D. Ariz. Mar. 15, 2013) (citing *Deutsche Credit Corp. v. Case Power & Equip. Co.,* 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994)).

Here, Plaintiff alleges the following in his Complaint:

> The 2-Acorns is an alter ego of Converti because Converti treated The 2-Acorns as her alter ego and used it for her own improper purposes and her personal benefit. Upon information and belief, Converti in the transaction described in this Complaint acted as the corporation's sole agent and controlling person. Upon information and belief, The 2-Acorns was never appropriately capitalized or otherwise financed, did not act in accordance with its own corporate formalities and organic documents, and was used by Converti as a device to engage in one or more fraudulent schemes.
>
> . . . .
>
> Converti is personally liable to Plaintiff because she was at all relevant times the alter ego of The 2-Acorns, Inc., and it was her fraudulent acts and omissions that induced [Plaintiff] to invest $350,000.

(Doc. 1 ¶¶ 8, 68.) Plaintiff also alleges that Converti controlled the money paid to The 2-Acorns, Inc., applying the $190,474.45 to the down payment and closing costs of the home and keeping the additional $159,525.45 for her own personal use. (*Id.* ¶¶ 83-93.) The Court finds that Plaintiff's allegations are sufficient to assert an alter ego theory of liability.

Plaintiff alleges that Defendants breached the Promissory Note when they defaulted on making payments owed to Plaintiff, failed to pay Plaintiff any of the money owed, and the breach caused Plaintiff damage. (Doc. 1 ¶¶ 26-28, 44, 78; Doc. 1-1 at 5.) Based on these allegations, the Court finds that Plaintiff has sufficiently stated claims for breach of contract against Defendants.

### f. Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, Plaintiff asserts claims against Defendants for breach of the implied covenant of good faith and fair dealing. All contracts as a matter of law include the

implied duties of good faith and fair dealing, and contract damages are available for their breach. *Wells Fargo Bank v. Ariz. Laborers, Tamsters & Sement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28-29 (Ariz. 2002). The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. *Wells Fargo Bank*, 38 P.3d at 28.

Here, as detailed above, Plaintiff alleges that Defendants failed to hire a contractor to renovate the purchased home, did not use the money Defendant paid for renovations of the home, and misrepresented that there were "slush" funds available related to the project. Plaintiff further alleges that Defendants' conduct as detailed above was in bad faith, and resulted in denying Plaintiff a return of $350,000 plus interest and late fees. (*Id.* ¶ 81.) Based on these allegations, the Court finds that Plaintiff has sufficiently stated claims for breach of implied covenant of good faith and fair dealing against Defendants.

### 3. Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the d]efendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Here, this factor weighs in favor of entering default judgment. Plaintiff has submitted a copy of the signed Promissory Note, which provides the amount of money that was transferred to Defendants ($350,000), as well as the terms for repaying Plaintiff, including the amount of monthly interest payments. (Doc. 1-1 at 5.) Notably, Plaintiff asserts tort claims, but only requests his initial investment along with the interest owed to him as stated in the Promissory Note. (Doc. 17.) Therefore, the Court finds this factor weighs in favor of entering default judgment.

### 4. Possibility of Dispute Concerning Material Facts

Here, there is little possibility of a dispute concerning the material facts as to Defendants. Plaintiff provided a signed copy of the Promissory Note. Further, Defendants, although being served over a year ago, have failed to appear and defend this action. Thus, the fifth *Eitel* factor weighs in favor of entering default judgment.

### 5. Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor considers whether the default was due to excusable neglect. There is no evidence that Defendants' failure to appear or otherwise defend was the result of excusable neglect. Plaintiff has prosecuted this matter since its inception, while Defendants have failed to appear and defend this action. Thus, the sixth *Eitel* factor weighs in favor of entering default judgment.

### 6. Policy Disfavoring Default Judgment

Under the seventh *Eitel* factor, the Court considers the policy that, whenever possible, cases should be tried on the merits. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b), however, indicates that the preference for resolving cases on the merits is not absolute. *PepsiCo, Inc.*, 238 F. Supp. 2d. at 1177. Because Defendants have neither appeared nor responded in this action, deciding this case on the merits is "impractical," if not impossible. *Id.* Thus, the seventh *Eitel* factor does not preclude the entry of default judgment.

On balance, the Court finds that the *Eitel* factors weigh in favor of entering default judgment against Defendants.

### c. Damages

Having found that entry of a default judgment is proper here, the issue becomes one of damages. In contrast to the other allegations in the Complaint, allegations pertaining to damages are not taken as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). As a result, "Plaintiff is required to prove all damages sought in the complaint." *Philip Morris USA Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "The plaintiff is required to provide evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011); Fed. R. Civ. P. 54(c). "In determining damages, a court can rely on the declarations submitted by the plaintiff[.]" *Philip Morris USA*, 219 F.R.D. at 498.

1       Plaintiff's requested damages in this case are specifically provided for in the Promissory Note. (Doc. 1-1 at 5.) The Promissory Note explains that a default on payments to Plaintiff by Defendants will result in "the whole sum of principal and interest [becoming] immediately due and payable at the option of the holder of this Note, with interest from date of such default on the entire unpaid principal and accrued interest." (*Id.*) Plaintiff has explained the amount owed by Defendants, totaling $452,666.74 ($350,000 original investment plus $102,666.74 in 22 months of unpaid interest payments). (Doc. 17.) Plaintiff also seeks payment of additional monthly interest payments of $4,666.67 until the principal amount of $350,000, plus all accrued interest, has been paid in full, which is specifically provided for in the Promissory Note. (Doc. 1-1 at 5.) The Court is satisfied as to the methodology and justification for calculating damages, and will award Plaintiff damages of $452,666.74, plus the additional monthly interest payments of $4,666.67.

**III. Conclusion**

      Because the Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants, and the application of the *Eitel* factors weigh in favor of the entry of default judgment, the Court will exercise its discretion to grant Plaintiff's Amended Motion for Entry of Default Judgment against Defendants.

      Accordingly,

      **IT IS ORDERED** that Plaintiff's Amended Motion for Entry of Default Judgment (Doc. 17) is granted.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**IT IS FURTHER ORDERED** that pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Clerk shall enter Judgment in favor of Plaintiff and against Defendants Rebekah Converti and The 2-Acorns, Inc. in the following amounts: (1) $350,000 in principal; (2) $102,666.74, which represents 22 months of unpaid monthly interest payments; and (3) additional monthly interest payments of $4,666.67 until the principal amount of $350,000, plus all accrued interest, has been paid in full to Plaintiff.

Dated this 2nd day of March, 2017.

*/s/ G. Murray Snow*
Honorable G. Murray Snow
United States District Judge